IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 21, 2014


GLYN TERRANCE DALE, SR. v. STATE OF TENNESSEE


Appeal from the Criminal Court for Knox County
No. 101507      Bob R. McGee, Judge


No. E2014-00552-CCA-R3-PC - Filed December 29, 2014


The Petitioner, Glyn Terrance Dale, Sr., appeals as of right from the Knox County Criminal Court's dismissal of his petition for post-conviction relief. The Petitioner contends that his trial counsel was ineffective for introducing into evidence at trial two statements the victim made to an investigator from the Department of Children Services (DCS). Following our review, we affirm the judgment of the post-conviction court.


**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT L. HOLLOWAY, JR., JJ., joined.

J. Liddell Kirk, Knoxville, Tennessee, for the appellant, Glyn Terrance Dale, Sr.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith DeVault, Senior Counsel; Randall Eugene Nichols, District Attorney General; and Ashley Dawn McDermott, Assistant District Attorney General, for the appellee, State of Tennessee.


**OPINION**


FACTUAL BACKGROUND


In 2007, the Petitioner was convicted of two counts of rape of a child and received an effective twenty-year sentence. State v. Glyn Dale, No. E2008-01139-CCA-R3-CD, 2010 WL 1241601, at *1 (Tenn. Crim. App. Mar. 31, 2010), perm. app. denied, (Tenn. Aug. 25, 2010). This court affirmed the Petitioner's convictions but remanded the case for a new sentencing hearing. Id. Following a second sentencing hearing, the Petitioner received an effective sentence of twenty-five years. State v. Glyn Dale, No. E2010-01824-CCA-R3-CD, 2012 WL 335460, at *1, 3 (Tenn. Crim. App. Feb. 1, 2012), perm. app. denied, (Tenn. May

16, 2012). This court affirmed the Petitioner's new sentences on direct appeal, and our supreme court declined to review that decision. Id. at *1.

At trial, the victim testified that she was raped by the Petitioner on two occasions shortly before her thirteenth birthday. Dale, 2010 WL 1241601, at *1. The victim testified that the rapes occurred at her aunt's house in June and July 2004. The victim's aunt and the Petitioner had three children together, and the Petitioner would frequently spend the night at the house, especially when the victim was visiting. The victim testified that the first rape occurred on a couch in the living room. The victim woke up to find the Petitioner on top of her and removing her clothes. He told her not to tell anyone and not to yell. The Petitioner then vaginally penetrated her with his penis for two or three minutes. The victim testified that, afterwards, she was in pain and cried herself to sleep. The next morning, the victim was bleeding from her vagina. Id.

The victim testified that the second rape occurred in July 2004, before her thirteenth birthday on July 14. Dale, 2010 WL 1241601, at *1. The victim was again asleep on a couch in the living room when she woke to find the Petitioner on top of her. The Petitioner told her not to scream or yell and vaginally penetrated her with his penis for two or three minutes. The victim testified that she was in pain after the rape but that there was no blood. The victim's mother and the principal of her school both testified that the victim's behavior changed around the time of the rapes. Id. at *1-2. The victim reported the rapes in September 2004, and a physical examination revealed "two notches in her hymen" that "were consistent with some form of penetration." Id. at *2.

The victim's grandmother and uncle testified at trial that the Petitioner admitted to them that he had raped the victim. Dale, 2010 WL 1241601, at *2-3. The victim's grandmother further testified that the Petitioner told her that he had sex with the victim twice before her thirteenth birthday. Id. at *2. The victim's aunt testified on the Petitioner's behalf at trial. Id. at *3. She testified that the victim had told her that "she was having sex with a 'guy from school'" prior to her accusations against the Petitioner. Id. The Petitioner testified and denied that he had raped the victim. The Petitioner further testified that the victim's grandmother and uncle had "misunderstood and mischaracterized what he said to them" because he had a speech impediment. Id.

The Petitioner filed a timely pro se petition for post-conviction relief. Counsel was appointed and an amended petition was filed. The Petitioner did not testify at the post-conviction hearing, choosing instead "to rely on the underlying record." The Petitioner argued that trial counsel was ineffective for admitting into evidence at trial two statements that the victim made to a DCS investigator. In the first statement, the victim said that the first rape occurred in June 2004 and that the second rape occurred "in July when she was

-2-

[thirteen] years old." In the second statement, the victim again said that the first rape occurred in June 2004, and that the Petitioner "got on top of her, took her pants and panties off[, ] penetrated her[,]" and that she cried and bled after the rape. In the second statement, the victim stated that the second rape occurred on July 2, 2004, before her thirteenth birthday.

Trial counsel testified that she was an Assistant Public Defender and that she represented the Petitioner at trial and on his first appeal. Trial counsel hired an investigator and received assistance from another Assistant Public Defender in preparing for trial. Trial counsel testified that the Petitioner was "a fairly cooperative client in the beginning" and that the Petitioner "seemed to fully grasp the issues that were at play." According to trial counsel, the State offered plea agreements of fifteen years and ten years, which the Petitioner rejected. Trial counsel testified that the Petitioner "asserted from the very beginning that he did not have any sexual contact at all with the victim." Trial counsel further testified that she "wanted to persuade the jury that there was a reasonable doubt . . . based on [the victim's] credibility as a witness."

To pursue that strategy, trial counsel testified that "it was important to find inconsistencies in what [the victim] had said during the time that the allegations came out." Trial counsel testified that she "found [a] discrepancy in the DCS records about what [the victim's] age would have been at the time of one of the alleged rapes." According to trial counsel, "one of the rapes definitely was alleged to have happened before [the victim] turned [thirteen]." However, there was a statement in the DCS records that the victim told an investigator that the second rape occurred after she had turned thirteen. Trial counsel testified that she "thought that was a significant inconsistency" and that it "could turn a child rape into a statutory rape if [the jury] didn't believe that it was forcible."

Trial counsel testified that she "thought that was a big enough inconsistency that [the jury] should see [it]." Trial counsel further testified that she discussed the issue with the Petitioner and "decided to make the jury aware of that inconsistency." Trial counsel testified that the Petitioner "never argued with [her] about" the decision regarding the statements from the DCS records. Trial counsel admitted that in order to get the statement into evidence, she had to stipulate to the admission of a second statement from the DCS records in which the victim stated that the second rape occurred on July 2, 2004, before her thirteenth birthday. However, trial counsel testified that in "weighing the risks and benefits of introducing it and discussing that with [the Petitioner]," she still believed "that the discrepancy was something that [the jury] would need to hear about."

The post-conviction court dismissed the Petitioner's petition for post-conviction relief.[1] In doing so, the post-conviction court stated that trial counsel's "one line of defense was to attack the credibility of the victim, [and] the DCS report did that to some extent." The post-conviction court continued, stating that trial counsel faced a serious dilemma because "to get in the inconsistency that she wanted the jury to see[] she was going to have to allow inconsistencies in matters that didn't help and may have hurt" the Petitioner's case. The post-conviction court concluded that it was "a strategic decision to make" and that trial counsel's "reasoning in doing what she did [was] very cogent" and "absolutely reasonable."

## ANALYSIS

The Petitioner contends that the post-conviction court erred in dismissing the petition for post-conviction relief. The Petitioner argues that trial counsel was ineffective for introducing the two statements from the DCS records because they "were more consistent than inconsistent with the victim's trial testimony"; therefore, trial counsel's decision was "unreasonable" and "undermine[d]" her trial strategy. The State responds that trial counsel's decision was an informed strategic decision and did not amount to ineffective assistance of counsel.

The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); see Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. Id. Because they relate to mixed questions of law and fact, we review the post-conviction court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993). In other words, a showing that counsel's performance falls below a reasonable standard is not enough; rather, the petitioner must also show that but for the substandard

---

[1] The Petitioner's pro se and amended petitions raised several other issues. However, the Petitioner has not raised those issues in his appellate brief; therefore, he has waived review of those issues in this court.

performance, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

In determining whether trial counsel's performance was deficient, this court has held that a "petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings." Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). "[D]eference to tactical choices only applies if the choices are informed ones based upon adequate preparation." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). An attorney's performance must be measured against the general standard of whether the services rendered were "within the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975).

We agree with the post-conviction court that trial counsel's decision regarding the statements from the DCS records was a reasonably based trial strategy. The evidence at the post-conviction hearing established that trial counsel's decision was an informed one based upon adequate preparation. As this court noted in its opinion affirming the Petitioner's convictions, the evidence regarding the June 2004 rape "was substantial." Dale, 2010 WL 1241601, at *7. As for the second rape, "the only difference in the proof relate[d] to the timing of the rape." Id. Outside of the testimony of the victim's aunt and the Petitioner, the only evidence that contradicted the victim's trial testimony was her statement to the DCS investigator that the second rape occurred after she turned thirteen. As such, we conclude that trial counsel's decision to admit the statements from the DCS records did not amount to ineffective assistance of counsel, even if portions of the statements were consistent with the victim's testimony at trial. Accordingly, we affirm the post-conviction court's dismissal of the petition.

CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE